OPINION
{¶ 1} Defendant-appellant William J. Alvey appeals his conviction in Belmont County Court, Eastern Division, of domestic violence. This court is asked to determine whether the state produced sufficient evidence to prove, for purposes of the domestic violence statute, that Alvey resided with the victim, Banessa Russell. For the reasons stated below, the decision of the trial court is reversed and appellant is discharged.
 STATEMENT OF FACTS {¶ 2} Alvey and Russell, Alvey's niece who lived next door to Alvey, had a heated confrontation on Alvey's porch. During a majority of the conversation Alvey was standing inside his house, talking through the screen door. However, after Russell failed to comply with Alvey's repeated requests for her to leave his house, he opened the screen door, which scraped Russell's foot, walked out onto the porch, and shoved Russell across the porch. Russell fell and hit her backside on the grill and fell onto a plastic garbage can. Russell then left Alvey's property.
 {¶ 3} As a result of the physical contact and conversation, Russell filed a report with the police. Alvey was then charged with domestic violence, a violation of R.C. 2919.25(A), knowingly causing or attempting to cause physical harm to a family or household member. The trial court found him guilty of the crime charged and sentenced him to 10 days in jail with all suspended on the condition that he pay a fine, complete one year of unsupervised probation, and that he not violate any of the laws of Ohio or any municipality during probation. Alvey timely appeals raising three assignments of error.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 4} "The court erred in finding the defendant guilty of domestic violence without the state having proven the essential element that the defendant was a `Family or household member' of the victim."
 {¶ 5} Alvey argues that the trial court could not have found him guilty of violating R.C. 2919.25, because Russell was not a "family or household member" as defined by the statute. This argument challenges the adequacy of the state's evidence used to prove the essential elements of the offense and, as such, is a sufficiency of the evidence argument.State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. When reviewing a sufficiency of the evidence argument, an appellate court will not reverse the conviction unless it finds, after viewing the evidence in the light most favorable to the prosecution, that no rational trier of fact could have found that the elements of the offense were proven beyond a reasonable doubt. State v. Goff, 82 Ohio St.3d 123, 138, 1998-Ohio-369. Whether or not the state presented sufficient evidence is a question of law dealing with adequacy. Thompkins, 78 Ohio St.3d at 386.
 {¶ 6} R.C. 2919.25(A) states that a person is guilty of domestic violence when he or she knowingly causes or attempts to cause physical harm to a "family or household member." "Family or household member" is defined as:
 {¶ 7} "(1) `Family or household member' means any of the following:
 {¶ 8} "(a) Any of the following who is residing or has resided with the offender:
 {¶ 9} "(i) A spouse, a person living as a spouse, or a former spouse of the offender;
 {¶ 10} "(ii) A parent or a child of the offender or another person related by consanguinity or affinity to the offender;
 {¶ 11} "(iii) A parent or a child of a spouse, person living as a spouse or former spouse of the offender or another person related by consanguinity or affinity to the spouse, person living as a spouse or former spouse of the offender.
 {¶ 12} "(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent." R.C.2919.25(E).
 {¶ 13} Alvey admits that Russell is his niece and is related by consanguinity; however, he contends that the state presented no evidence indicating that Russell was currently residing with him or had previously resided with him. Therefore, he argues that the elements of R.C. 2919.25
are not met and he could not have been found guilty of domestic violence.
 {¶ 14} Despite the clear language in the statute, the state contends that even though Russell and Alvey did not live in the same house, they resided together for purposes of the domestic violence statute. The state cites State v. Williams, 79 Ohio St.3d 459, 462,1997-Ohio-79, and to a prior Seventh District Court of Appeals decision,State v. Scott (Feb. 22, 1999), 7th Dist. No. 96BA14, for this proposition. The state contends that these cases stand for the proposition that since Alvey and Russell are related by consanguinity and R.C. 2919.25
is aimed at preventing domestic violence between individuals related by consanguinity (along with other types of relationships), the elements of domestic violence are met.
 {¶ 15} In Williams, the Court was asked to determine if there was sufficient evidence to prove that the victim was "a person living as a spouse" who was residing with the offender as defined in R.C.2919.25(E)(1)(a)(i), (2). In holding that there was sufficient evidence to find that the accused and the victim resided together and were living as spouses, the Court specifically declined to adopt a narrow definition which would limit "family or household members" to those who actually share one residential address. Williams, 79 Ohio St.3d at 462. The Court held "[t]he offense of domestic violence, as expressed in R.C.2919.25(E)(1)(a) and related statutes, arises out of the relationship of the parties rather than their exact living circumstances." Id. at paragraph one of the syllabus. In reaching this conclusion it explained that the General Assembly recognized the special nature of domestic violence when it drafted the domestic violence statutes and it believed that an assault involving a family or household member deserved further protection than an assault on a stranger. Id. at 463.
 {¶ 16} In Scott, we applied this reasoning to find that the state did not need to present evidence to show that appellant and his sister, the victim, had resided together or were residing together at the time of the incident in order to prove domestic violence. Scott, 7th Dist. 96BA14. We stated the following:
 {¶ 17} "Since it is appellant's sister who is the victim here, this is the type of the relationship R.C. 2919.25 is aimed at preventing.Williams, supra. Therefore, the second part of appellant's argument [that the state did not provide sufficient evidence to prove he was residing or had resided with his sister] fails." Id.
 {¶ 18} The foregoing portion of our decision in Scott, in addition to its inarticulate draftsmanship, is an interpretation of Williams that is not warranted by the facts in that case or consistent with the intent of R.C. 2919.25(E)(1)(a). Accordingly, we hereby reverse Scott to the extent that we now hold that the state must show under R.C.2919.25(E)(1)(a) that the offender resides or had resided with the victim in order to sustain a domestic violence conviction. It is no longer sufficient for the state to rely merely upon the fact that the victim and offender are related to prove domestic violence under subsection (E)(1)(a).
 {¶ 19} Admittedly, the Williams Court's reasoning and statement that "domestic violence arises out of the relationship of the parties rather than their exact living circumstances," could be interpreted to mean that the residency requirement in the statute is ignored because the relationship between the accused and the victim is controlling for a determination of domestic violence. However, this interpretation is problematic because it completely ignores the statutory construction of Section (E)(1) of R.C. 2919.25. Section (E)(1) of this statute has subsection (a) and subsection (b). Subsection (a) specifically has a residency requirement for all relationships defined under it, while subsection (b) does not contain a residency requirement for all relationships defined under it. We must presume that if the General Assembly intended for only the relationship to matter under subsection (a), it would have constructed that subsection the same way it constructed subsection (b) (i.e., leaving out the residency requirement). The different construction of these two subsections indicates that the residency requirement in subsection (a) cannot be ignored or be interpreted to only require proof of the relationship and not that the offender was "residing or had resided" with the victim. Therefore, our previous interpretation of Williams (in the Scott case) is flawed; the determination of whether sufficient evidence was produced to prove domestic violence under R.C. 2919.25(E)(1)(a) must include a discussion of whether the offender resides or has resided with the victim instead of purely relying on the relationship between the offender and the victim.
 {¶ 20} Moreover, the Williams holding should be read in the context in which it was decided. In Williams, the Supreme Court was determining whether victim and the accused were living as spouses under R.C.2919.25(E)(2). This determination required the court to find that the parties were cohabitating, which it did. Williams, 79 Ohio St.3d at 465
(stating the essential elements of cohabitation are sharing of familial or financial responsibilities and consortium). Given the case law the Ohio Supreme Court cites for cohabitation and the definition it provided, it could not be concluded that people could be cohabitating, but not residing together. Therefore, the residency element and the cohabitation element are partially overlapping. As such, in the situation where it is claimed that the offender and victim are living as spouses, domestic violence does arise out of the relationship, because given their relationship they are residing together even though they may not have the same residential address. Furthermore, the Supreme Court's holding that "domestic violence arises out of the relationship of the parties rather than their exact living circumstances" indicates that the parties do not need to share the same residential address to be considered to reside together. Therefore, the residency requirement is not meant to be ignored, rather it must be examined as to the particular living arrangement of the parties to determine whether they are currently residing or had resided together.
 {¶ 21} In support of this proposition, we note that other appellate districts agree that residency is an essential element of domestic violence under R.C. 2919.25 (E)(1)(a). See, e.g., State v. Jorden
(1999), 134 Ohio App.3d 131 (finding that sisters did not or had not resided with each other for purposes of the domestic violence statute);State v. Toles (Dec. 8, 1999), 4th Dist. No. 99CA9 (finding the elements of domestic violence were proven to show domestic violence against the offender's mother of his child, but because residency was not shown the offender could not be convicted of domestic violence against his child). Even after Scott was decided it appears our court was finding error with the Scott interpretation of Williams. Six months after Scott was decided, our court was faced with another domestic violence case, Statev. Hackman (Aug. 26, 1999), 7th Dist. No. 98BA24. While the majority opinion does not discuss the elements of domestic violence, the concurrence recognized the residency requirement and the importance of it in the domestic violence statute by stating the following:
 {¶ 22} "Although the parties apparently presumed that the difference between an assault under R.C. 2901.13 and a domestic violence charge under R.C. 2919.25 rests upon the relationship of the perpetrator to the victim, an additional distinction between those two crimes is found in R.C. 2919.25(E)(1), i.e. that the victim `is residing or has resided with the offender.'" Id. (the concurrence goes on to cite to the record where the accused admitted that the victim had lived with him at one time and, as such, the elements of domestic violence have been met).
 {¶ 23} Therefore, given all the above analysis, our prior decision in Scott is overruled. Residency is a requirement of R.C. 2919.25(E)(1)(a) which must be proven to sustain a domestic violence conviction and is not found merely because the parties are related by consanguinity. However, the determination of whether the parties are residing together is based upon their particular living circumstances.
 {¶ 24} In the case at hand, the testimony at trial revealed that Russell lived next door to Alvey. No testimony was presented as to whether they had previously resided together. However, the state additionally argues that Alvey testified that Russell came over to his house every day, ate his food, and that they got along well with each other. Therefore, the state concludes that given the circumstance of how they lived, they resided together for purposes of the statute because there was a "shared familial or financial responsibilities."
 {¶ 25} The element of shared familial or financial responsiblilities is one of the two elements required to prove "cohabitation" for purposes of finding that two people are "living as spouses." In the situation before us, we are not addressing whether two people are "living as spouses." Therefore, a finding of the elements of cohabitation are not necessary. However, as aforementioned, residency is determined from the living circumstances of the parties. Sharing meals and coming over to each other's house frequently is not enough to be considered to be residing together. As the Fourth District held inToles, periodic visits with one another, whether or not they are overnight and no matter how frequent will not rise to the level of residency unless there was an intent to permanently dwell with one another. Toles, 4th Dist. No. 99CA9. The only testimony at trial was that Russell frequented the Alvey house and ate some of his food. However, both parties testified that she lived next door to Alvey, not with him. As such, the state failed to prove the essential elements of domestic violence. Accordingly, Alvey's conviction for domestic violence is reversed.
 {¶ 26} Alvey additionally asks this court to reduce the charge of domestic violence to disorderly conduct. Pursuant to R.C. 2945.74 and Crim.R. 31(C), a fact-finder may consider lesser included offenses of a charged offense and may find a defendant guilty of a lesser included offense if the facts support such result. An appellate court is empowered to enter a judgment that should have been entered by the lower court.State v. Harris (1996), 109 Ohio App.3d 873, 876, citing App.R. 12(B). Therefore, we have the authority to find Alvey guilty of the lesser included offense and enter judgment accordingly. However, we cannot enter a judgment that Alvey is guilty of disorderly conduct because it is not a lesser included offense of domestic violence.
 {¶ 27} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus. Courts agree that when looking at the offenses of domestic violence, R.C. 2919.25, and disorderly conduct, R.C. 2917.11, the first and third prongs of Deem are met. However, there is a split among the districts as to whether the second prong is met.State v. Schaefer (Apr. 28, 2000), 2d Dist. No. 99CA88; State v. Kutnar
(Sept. 30, 1999), 11th Dist. No. 98-L-117; State v. Neal (Sept. 1, 1998), 10th Dist. No. 97APA12-1676; State v. Wilhelm (Aug. 5, 1996), 4th Dist. No. 95CA2123; State v. Hunt (Mar. 18, 1996), 5th Dist. No. 95CA0226; State v. Burgess (1992), 79 Ohio App.3d 584 (Twelfth District); State v. Stuber (1990), 71 Ohio App.3d 86 (Third District);State v. Reynolds (1985), 25 Ohio App.3d 59 (First District). The Second and Tenth Appellate Districts hold that disorderly conduct is not a lesser included offense of domestic violence because the second prong of the Deem test is not met. Neal, 10th Dist. No. 97APA12-1676; Schaefer, 2d Dist. No. 99CA88. In coming to this determination, these districts examine the offense of domestic violence and disorderly conduct as they are statutorily defined and do not take into consideration the specific factual scenario of the case. However, it appears that the First, Third, Fourth, Fifth, Eleventh and Twelfth Appellate Districts base their determination that disorderly conduct is the lesser included offense of the domestic violence more upon the facts of the individual case rather than upon an abstract determination. Kutnar, 11th Dist. No. 98-L-117;Wilhelm, 4th Dist. No. 95CA2123; Hunt, 5th Dist. No. 95CA0226; Burgess,79 Ohio App.3d 584 (Twelfth District); Stuber, 71 Ohio App.3d 86 (Third District); Reynolds, 25 Ohio App.3d 59 (First District).
 {¶ 28} The Ohio Supreme Court has stated that the second prong ofDeem requires the court "to examine the offenses at issues as statutorily defined and not with reference to specific factual scenarios." State v.Barnes, 94 Ohio St.3d 21, 26, 2002-Ohio-68. "[T]he evidence presented in a particular case is irrelevant to the determination of whether an offense, as statutorily defined is necessarily included in a greater offense." Id. Therefore, we are required to view the offense abstractly, as the Second and Tenth Appellate Districts do, and if there is any situation where domestic violence could be committed without committing disorderly conduct, then disorderly conduct is not a lesser included offense of domestic violence. Id. (stating that felonious assault is not the lesser included offense of attempted murder because it is possible to commit the greater offense without committing the lesser offense).
 {¶ 29} Domestic violence requires one to cause or attempt to cause physical harm. R.C. 2919.25(A). Disorderly conduct requires one to cause inconvenience, annoyance, or alarm. R.C. 2917.11(A). Given the statutory definition of this offense, disorderly conduct is not a lesser included offense of domestic violence because one can cause or attempt to cause physical harm without necessarily causing inconvenience. As the Second District explains:
 {¶ 30} "[O]ne may attempt to cause physical harm to another without his or her knowledge, in which case the victim will not have suffered inconvenience, annoyance, or alarm. We concede that, in most cases, the actions by which one causes or attempts to cause physical harm to another may also cause inconvenience, annoyance, or alarm to that person. But a victim might be wholly unaware of an attempt to cause physical harm where, for example, the perpetrator throws an object at the victim, who is not looking at the perpetrator, but misses his target, and thus the victim suffers no inconvenience, annoyance, or alarm. Deem requires us to conduct this analysis in the abstract: can domestic violence, as statutorily defined, ever be committed without disorderly conduct also being committed. * * * Thus, we conclude that disorderly conduct is not a lesser included offense of domestic violence * * *." Schaefer, 2d Dist. No. 99CA88. This assignment of error has merit.
 {¶ 31} The state failed to prove an essential element of domestic violence, residency. However, we cannot enter a judgment of disorderly conduct, as Alvey suggests, since disorderly conduct is not the lesser included offense of domestic violence.
 ASSIGNMENTS OF ERROR NUMBERS TWO AND THREE {¶ 32} "The court erred by failing to consider the defendant's right to defend his property with reasonable force."
 {¶ 33} "The court found the defendant guilty against the manifest weight of the evidence."
 {¶ 34} The disposition of assignment of error number one renders the arguments raised in these assignments of error moot. Accordingly, we will not address these assignments of error.
 {¶ 35} For the foregoing reasons, the decision of the trial court is hereby reversed and appellant is discharged.
Waite, P.J., and DeGenaro, J., concur.