The STATE of Ohio, Appellee,

v.

SIMS, Appellant.

[Cite as State v. Sims, 169 Ohio App.3d 579, 2006-Ohio-6285.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060210.

Decided Dec. 1, 2006.

580

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Scott M. Heenan, Assistant Prosecuting Attorney, for appellee.

Levy, Turner & Gast, L.P.A., and Richard P. Turner, for appellant.

GUCKENBERGER, Judge.

## Background

{¶ 1} Corey Sims appeals two convictions for domestic violence under R.C. 2919.25(A). We sustain his conviction involving Monica Davis and reverse his conviction involving Pagie Davis. In his only assignment of error, Sims claims that there was insufficient evidence to support his convictions and that his convictions were against the manifest weight of the evidence.

{¶ 2} The Supreme Court of Ohio recently stated that "[i]n reviewing a record for sufficiency, 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " [1]

---

1. *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 36.

{¶ 3} In *State v. Thompkins,*[2] the Supreme Court of Ohio stated, "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' " (Emphasis omitted.)

## Facts

{¶ 4} Monica Davis and Corey Sims are the natural parents of a daughter, Pagie Davis. At the time of the domestic violence alleged in this case, Pagie was 12 years old. Pagie did not learn that Sims was her father until she was eight years old. Monica and Sims had been in court on financial issues involving Pagie a few days before the events in this case.

{¶ 5} At about 9:30 p.m. on December 7, 2005, Monica was returning to her house in Madisonville from her aunt's house next door. She was on her back porch inserting the key into her back door, when Sims came up behind her on the porch. Sims told Monica that if she did not let him see Pagie, Monica would suffer the consequences. Monica turned her back on him and proceeded into her house. Sims then grabbed Monica from behind, put his arm around her neck, and started to choke her.

{¶ 6} Pagie heard the commotion and came to her mother's aid. Pagie hit Sims to get him off her mother. Sims then turned around and with his hands started choking and shaking Pagie. Monica intervened and Sims left. Monica testified that Sims's choking hurt her. Pagie said about herself that Sims's actions hurt "a lot."

{¶ 7} The police were called and responded to Monica's house. Cincinnati Police Officer Howard Moy, the second officer to respond, arrived at 10:18 p.m. Officer Moy found Monica and Pagie to be nervous and "a little fearful."

{¶ 8} Sims defended against the charges by claiming that he was working at Central Steel & Wire in Elmwood Place when the domestic violence allegedly occurred. His supervisor testified during direct examination that based on Sims's time card, he clocked in at work at 3:44 p.m. and clocked out at 11:55 p.m. on December 7, 2005. During the shift, breaks were from 6:20 p.m. to 6:40 p.m. and from 9:00 p.m. to 9:15 p.m. The supervisor testified that if Sims were to leave the building during these times, he was supposed to clock out and that the time card did not indicate that he had clocked out during "these times." The

2. (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

supervisor was asked whether he knew of his "own personal knowledge" that Sims was at work between 3:44 p.m. and 11:55 p.m. on December 7, 2005. The supervisor responded, "He was there."

{¶ 9} On cross-examination, the supervisor indicated that he supervised ten employees at the time and admitted that he could not see all of them at once. The supervisor then admitted that without the time card, he did not have direct knowledge or memory of Sims's being at work "on a particular day at a particular time." On redirect examination, the supervisor testified that he wrote on the time card that Sims had worked eight hours on December 7. The supervisor further said that he would not have indicated eight hours if Sims had been gone from work between 9 p.m. and 10 p.m.

{¶ 10} Sims testified that he was at work on December 7 and had not left the premises between "3:44 and 11:55." He claimed to have been at work during the time it was alleged that he had committed the domestic violence. The parties stipulated that Sims had been convicted of domestic violence in 1995.

### Sufficiency and Weight as to Domestic Violence against Monica Davis

{¶ 11} After viewing the evidence in a light most favorable to the prosecution, we hold that there was clearly sufficient evidence to find Sims guilty of domestic violence against Monica. The conviction was also supported by the weight of the evidence. The trial court was in the best position to view the demeanor of the witnesses and to assess their credibility. If, as it obviously did, the court found Monica and Pagie to be credible and Sims not to be credible, the court appropriately found that the weight of the evidence supported convicting Sims of domestic violence as to Monica. Sitting as a 13th juror, we do not disagree with the trial court's resolution of the conflicting testimony.[3] The court's judgment convicting Sims of domestic violence as to Monica is affirmed.

### Sufficiency as to Domestic Violence against Pagie Davis

{¶ 12} Sims's conviction for domestic violence against his daughter, Pagie, was not, however, supported by sufficient evidence. Sims was convicted of causing or attempting to cause physical harm to "a family or household member."[4] But the state did not establish that Pagie was a family or household member.

{¶ 13} R.C. 2919.25(F)(1)(a)(ii) defines "family or household member" to include a child of the offender, only if the child "is residing or has resided with the

---

3. Id.

4. R.C. 2919.25(A).

offender." Notwithstanding a father-daughter relationship, a daughter must have resided with her father for the father to be convicted of domestic violence against her.[5] This, of course, is true of all the relationships described in R.C. 2919.25(F)(1)(a).[6]

{¶ 14} The following testimony during the state's direct examination of Pagie is the closest that the evidence came to establishing that Pagie resided with Sims:

{¶ 15} "Q. Now, I want to turn your attention to the—first of all, let me backup a second. Do you ever visit with Corey Sims or does he ever visit you or—

{¶ 16} "A. I used to visit him back in the foster care. But it stopped after I left foster care.

{¶ 17} "Q. And why is that?

{¶ 18} "A. Because like after I got back from foster care we just stopped visiting and the custody hearings got more serious." [7]

{¶ 19} "Residing" and "resided" are not defined in R.C. 2919.25. The definition for "residence" in Black's Law Dictionary [8] includes "[t]he act or fact of living in a given place for some time" and "[t]he place where one actually lives, as distinguished from a domicile." According to the Ohio Jury Instructions, " '[r]eside' means to live in a place on an ongoing basis." [9]

{¶ 20} In *State v. Alvey*,[10] the Seventh Appellate District held that "residency is determined from the living circumstances of the parties. Sharing meals and coming over to each other's house frequently are not enough to be considered to be residing together. As the Fourth Appellate District held in *Toles*, periodic visits with one another, whether or not they are overnight and no matter how frequent will not rise to the level of residency unless there was an intent to permanently dwell with one another." [11]

---

5. *State v. Jorden* (1999), 134 Ohio App.3d 131, 730 N.E.2d 447, and *State v. Gibson*, 8th Dist. Nos. 84419 and 84420, 2005-Ohio-1495, 2005 WL 730059 (daughter never resided with father).

6. *State v. Alvey*, 7th Dist. No. 03 BE 24, 2003-Ohio-7006, 2003 WL 22997277 (niece never resided with uncle); *State v. Toles* (Dec. 8, 1999), 4th Dist. No. 99 CA 9, 1999 WL 1232092 (sister never resided with sister).

7. Transcript p. 39.

8. Black's Law Dictionary (8th Ed.2004) 1335.

9. 4 Ohio Jury Instructions (2004), Section 519.25(12).

10. 7th Dist. No. 03 BE 24, 2003-Ohio-7006, 2003 WL 22997277.

11. Id. at ¶ 25. For more on the meaning of "residing" and "resided," see Adrine and Ruden, Ohio Domestic Violence Law (2006), Section 9:4.

{¶ 21} The evidence in this case did not show that Pagie and Sims ever resided together. Therefore, the evidence was not sufficient to convict Sims of domestic violence against Pagie.

{¶ 22} The state argues that Sims's failure to make a Crim.R. 29 motion waived any error based on the sufficiency of the evidence. But a defendant does not waive a sufficiency claim by failing to raise it in the trial court.[12] The defendant's "not guilty" plea preserves the right to object to the sufficiency of the evidence because the prosecution must prove each element of the offense beyond a reasonable doubt.[13] The case on which the state mainly relies, *State v. Murray,*[14] is from the Eleventh Appellate District. That district, however, in relying on *State v. Jones*[15] and *State v. Carter,*[16] has retreated from its position that the failure to make a Crim.R. 29 motion waives a sufficiency argument.[17] At any rate, "a conviction based upon insufficient evidence would almost always amount to plain error."[18]

{¶ 23} We sustain Sims's assignment of error as it relates to Pagie. We reverse his conviction for domestic violence involving Pagie and order him discharged from further prosecution for that offense. We affirm his conviction for domestic violence involving Monica.

Judgment affirmed in part
and reversed in part.

HILDEBRANDT, P.J., and SUNDERMANN, J., concur.

---

12. *State v. Jones* (2001), 91 Ohio St.3d 335, 346, 744 N.E.2d 1163.

13. *State v. Carter* (1992), 64 Ohio St.3d 218, 223, 594 N.E.2d 595.

14. 11th Dist. No. 2003–L–045, 2005-Ohio-1693, 2005 WL 820540, at ¶ 42.

15. (2001), 91 Ohio St.3d 335, 744 N.E.2d 1163.

16. (1992), 64 Ohio St.3d 218, 594 N.E.2d 595.

17. See *State v. Barringer,* 11th Dist. No. 2004–P–0083, 2006-Ohio-2649, 2006 WL 1459759, at ¶ 60–62.

18. *State v. Shadoan,* 4th Dist. No. 03CA764, 2004-Ohio-1756, 2004 WL 736587, at ¶ 16.