OPINION
{¶ 1} Defendants-appellants, Charles and Miriam Collister, appeal the decision of the Trumbull County Court of Common Pleas, granting summary judgment in favor of plaintiff-appellee, Allstate Indemnity Company. Allstate is seeking a declaration that it has no duty, under a policy of insurance issued to the Collisters, to defend them in *Page 2 
another pending lawsuit. For the following reasons, we affirm the decision of the court below.
 {¶ 2} As of August 1, 2002, Charles Collister was the named insured on an Allstate homeowners policy, insuring a residence located in Cleveland Heights, Ohio. The policy provides, as part of its family liability protection, that "Allstate will pay damages which an insured person
becomes legally obligated to pay because of bodily injury orproperty damage arising from an occurrence to which this policy applies" and "all costs we incur in the settlement of any claim or the defense of any suit against an insured person."
 {¶ 3} The homeowners policy defines "insured person" as follows: "you [meaning the named insured and their resident spouse] and, if a resident of your household * * * any relative." An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage." Excluded from coverage under the policy is "any bodily injury or property damage
intended by, or which may reasonably be expected to result from the intentional or criminal acts of, any insured person." Finally, "[t]he terms and conditions of this policy impose joint obligations on persons defined as an insured person. This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person."
 {¶ 4} On April 18, 2005, defendant Carolyn Bryant, filed a civil lawsuit against Charles and Miriam Collister, and their adult son, Mark Allan Collister. The complaint alleged, in relevant part, as follows: *Page 3 
 {¶ 5} "2. From January, 2002 to March, 2003, John Doe and James Doe, both minors under the age of 13, were repeatedly sexually assaulted by Defendant Mark A. Collister who is presently incarcerated for these acts, having been convicted of these crimes."[1]
 {¶ 6} "3. Defendant, Mark A. Collister, committed these acts both in Trumbull County, Ohio and Cuyahoga County, Ohio in the home of his parents and Defendants, Charles Collister and Miriam Collister."
 {¶ 7} "4. Defendants, Charles Collister and Miriam Collister were negliegent in that they failed to warn the parents or guardians of John Doe and James Doe and failed to protect John Doe and James Doe while they were in Defendants' home, and failed to halt Mark A. Collister from committing his criminal acts."
 {¶ 8} Allstate undertook the legal defense of the Collisters under a reservation of rights.
 {¶ 9} On October 5, 2005, Allstate filed a Complaint for Declaratory Judgment against the Collisters and Carolyn Bryant, seeking "judgment declaring that it has no duty to defend or indemnify any of the Collisters as to Bryant's claims in the tort lawsuit, and such other relief as may be just and proper."
 {¶ 10} The following evidence was produced through discovery. The Collisters admitted that Mark's "residence [sic] address," for the period from January 1, 2001, through April 1, 2003, was the Cleveland Heights residence insured under the Allstate policy. Charles Collister testified, by affidavit, that "[a]t all times relevant to [the criminal *Page 4 
charges against Mark], Mark was an adult completely responsible for his own life (i.e. he was employed outside the house; had his own key to the house; had his own bedroom in the house; took some meals outside the house; and came into the house and went from the house as and when he wished). Further, neither my wife nor I ever had any reason to believe that Mark had committed any criminal or immoral act in our house." Charles also testified, by affidavit, that he "did not believe that any of my * * * adult children were members of [his] household either when or after [he] obtained the policy."
 {¶ 11} In January 2006, Allstate moved for summary judgment on the grounds that sexual molestation is not an "occurrence" under the homeowners policy and that the intentional acts exclusion applied to preclude coverage and/or the duty to defend.
 {¶ 12} On September 15, 2006, the trial court granted summary judgment in favor of Allstate on the basis of the intentional acts "exclusion, the fact that Mark Collister is an insured under the policy, together with the `joint obligations' clause of the policy."
 {¶ 13} Charles and Miriam Collister timely appeal and raise the following assignment of error: "The lower court erred to the prejudice of Appellants-Defendants, Charles Collister, Miriam Collister, and Mark Collister by not overruling Plaintiff-Appellee Allstate Insurance [sic] Company's Motion for Summary Judgment made on January 25, 2006, on grounds that genuine issues of material fact exist."
 {¶ 14} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue of material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion *Page 5 
is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor."
 {¶ 15} Unlike factual questions which must be construed in favor of the non-moving party, the interpretation of an insurance contract is a question of law. Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm,73 Ohio St.3d 107, 108, 1995-Ohio-214.
 {¶ 16} A trial court's decision to grant summary judgment, like other questions of law, is reviewed by an appellate court under a de novo standard of review. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision. Brown v. Cty. Commrs. of SciotoCty. (1993), 87 Ohio App.3d 704, 711 (citation omitted).
 {¶ 17} The Collisters raise two distinct arguments under their sole assignment of error. The first is that summary judgment was improperly granted based on the intentional act and "joint obligations" provisions of the policy, which exclude coverage for the intentional acts of an "insured person" and impute the acts of any "insured person" under the policy to other insured persons. Since Mark's intentional acts of molestation are not covered by the policy, Charles and Miriam's allegedly negligent supervision of Mark is not covered.
 {¶ 18} The Collisters assert that Mark is not an insured person under the policy, i.e. he was not a resident relative of Charles' household. The Collisters do not dispute that Mark was a resident and a relative, but maintain that the term "household" suffers *Page 6 
from "vagueness" and that a genuine issue of material facts whether Mark was a member of the household.
 {¶ 19} The Ohio Supreme Court has discussed the meaning of the word "household," which the Allstate policy does not define. The Supreme Court adopted, as its "common, ordinary, usual meaning," the following definition of a "household": "those who dwell under the roof and compose a family: * * * a social unit comprised of those living together in the same dwelling place * * *." Shear v. W. Am. Ins. Co. (1984),11 Ohio St.3d 162, 166, citing Webster's Third New International Dictionary. This court has also approved the following definition: "A `resident of your household' refers to one who lives in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excludes a temporary or transient visitor." Silves v.Kosovec (Aug. 9, 1996), 11th Dist. No. 95-T-5331, 1996 Ohio App. LEXIS 3349, at *5, citing Farmers Ins. of Columbus, Inc. v. Taylor (1987),39 Ohio App.3d 68, at syllabus.
 {¶ 20} "[T]he primary consideration is the nontemporary nature * * * of the living arrangements." Am. States Ins. Co. v. Guillermin (1995),108 Ohio App.3d 547, 554 (citations omitted).
 {¶ 21} Accordingly, we find no ambiguity or "vagueness" about the term "household" as used in the Allstate policy. See Rock v. Michigan Mut.Ins. Co., 8th Dist. No. 80742, 2002-Ohio-5074, at ¶ 18; Farmers Ins. ofColumbus, Inc. v. Cater (July 25, 1995), 3rd Dist. No. 1-94-68, 1995 Ohio App. LEXIS 3187, at *5.
 {¶ 22} The parties dispute the issue of whether a person belongs to a "household" is a question of law or fact. The issue is a factual issue that, like any other *Page 7 
factual issue, may be decided as a matter of law where "reasonable minds can come to but one conclusion" regarding the issue. Thus, the issue is a suitable one for determination on a motion for summary judgment. SeeSilves, 1996 Ohio App. LEXIS 3349, at *7-*8 (finding as a matter of law that an adult son was a member of mother's household);Guillermin, 108 Ohio App.3d at 554 (finding as a matter of law that an adult son was not a member of mother's household); Grant v. W. Am Ins.Co., 3rd Dist. No. 4-01-10, 2001-Ohio-2108, 2001 Ohio App. LEXIS 2505, at *4 (finding "a disputed issue of material fact exists" as to whether an adult daughter and mother were members of the same household).
 {¶ 23} In the present case, reasonable minds can only come to the conclusion that Mark was a member of Charles Collister's household. The undisputed evidence before the court is that Mark resided exclusively at his father's house at all times relevant to the coverage issues in the underlying lawsuit, a period of over two years. This is sufficient to satisfy Allstate's burden on summary judgment.
 {¶ 24} In Shear, the Ohio Supreme Court affirmed the decision that an adult, emancipated son was a member of his father's household where father and son had lived together for many years. 11 Ohio St.3d at 166. As in this case, both father and son were "separately employed and non-dependent on the other," the son was "fully emancipated" and the father was "the exclusive owner of the house." The Supreme Court specifically stated these factors did not "render appellant and his son members of separate, distinguishable households." Id. Furthermore, the Supreme Court noted there was "no evidence in the record of an arm's-length agreement" between the father and son nor that the living arrangement "was temporary in nature." Id. *Page 8 
 {¶ 25} In a subsequent decision, the Ohio Supreme Court affirmed the finding that two brothers were members of the same household, despite the fact they only resided together for a period of six months and one of the brothers received his mail at a separate residence. Thompson v.Preferred Risk Mut. Ins. Co. (1987), 32 Ohio St.3d 340, 341[2]
 {¶ 26} See also Rose v. Natl. Mut. Ins. Co. (1999),134 Ohio App.3d 229, 240 (holding that a grandson was a member of his grandfather's household where he "was a resident of his grandparents' home when he was living in a school dormitory during the period school was in session but returning to his grandparents' house on school vacations");Cater, 1995 Ohio App. LEXIS 3187, at *5-*6 (holding that, underShear, the court must find mother and daughter who resided together members of the same household when they "were, at the time of the accident, family members living in the same household, even though they were separately employed and self-sufficient" and the daughter was "emancipated for several years").
 {¶ 27} The Collisters argue a genuine issue of material fact is created by the lack of any evidence regarding the permanency of the living arrangement, Mark's financial independence, or the degree to which the Collisters controlled Mark's actions. Moreover, the Collisters assert that Charles' affidavit testimony that Mark was not a member of his household is "not to be ignored." *Page 9 
 {¶ 28} None of this evidence, or lack thereof, is sufficient to raise a genuine issue of material fact. Contrary to the Collisters' position, a resident relative's financial independence is not relevant to the issue of whether the relative is a member of the household.Shear, 11 Ohio St.3d at 166 (the fact that resident relatives are "separately employed" and "non-dependent on each other" does not "render [them] members of separate, distinguishable households");Grant, 2001 Ohio App. LEXIS 2505, at *4 (reversing the lower court's determination that resident relatives were not members of the same household "solely because the parties were economically independent of each other").
 {¶ 29} Likewise, there is no case law suggesting that a parent's ability to control their child's actions is a factor in determining whether they comprise a household. To the contrary, the case law is clear that adult, emancipated children may be members of their parents' households, provided their residency is of a non-temporary nature. InPrudential Property and Cas. Ins. Co. v. Koby (1997),124 Ohio App.3d 174, this court affirmed a grant of summary judgment finding that an emancipated, thirty-two year-old career army officer was a member of his parents' household where "he regularly spent a sufficient amount of time at the parental abode." Id. at 179-182 (emphasis sic). See alsoCater, 1995 Ohio App. LEXIS 3187, at *5-*6.
 {¶ 30} The Collisters assert there was a lack of evidence regarding the permanency of Mark's residency with his parents. We disagree. As noted above, this court has defined a "resident of a household" to include "one who lives in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excludes a temporary or transient visitor." Silves, *Page 10 
1996 Ohio App. LEXIS 3349, at *6 (citation omitted). Also Guillermin108 Ohio App.3d at 554 ("the primary consideration is the nontemporary nature * * * of the living arrangements") (citations omitted).
 {¶ 31} In the present case, the undisputed evidence is that Mark resided exclusively with his parents for over two years. This is sufficient to establish the non-temporary nature of his residency.
 {¶ 32} In the absence of evidence that Mark's residency was temporary in nature or that Mark resided with his parents in a capacity other than as a family, e.g. as a tenant, the Collisters have failed to raise a genuine issue of material fact regarding Mark's status as a resident of the Collisters' household.
 {¶ 33} The Collisters' final argument is that Allstate failed to establish that any of Mark's criminal conduct took place in Cuyahoga County. "Allstate's case requires a showing that Mark Collister committed certain intentional activity in the insured household." The Collisters do not cite any provision in the Allstate policy requiring an "occurrence," for the purpose of family liability protection, to occur in the residence insured for the purpose of dwelling protection. Nor does the intentional acts provision specify that the intentional and/or criminal acts must occur in any particular location for the exclusion to apply. Thus, Allstate was under no burden to demonstrate the location of Mark's intentional acts.
 {¶ 34} In sum, Mark is an insured under the Allstate policy by virtue of being a resident relative of Charles Collister's household. The Allstate policy excludes coverage for injuries resulting from the intentional or criminal acts of an insured person. The Collisters have been sued for injuries resulting from Mark's intentional or criminal acts. *Page 11 
Mark's actions are binding upon the Collisters. Accordingly, Allstate was entitled to summary judgment.[3]
 {¶ 35} The decision of the Trumbull County Court of Common Pleas, granting summary judgment in favor of Allstate, is affirmed.
CYNTHIA WESTCOTT RICE, P.J., concurs, COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.
[1] Mark A. Collister pled guilty to 53 counts of Rape (Life) and one count of Gross Sexual Imposition in the Trumbull County Court of Common Pleas. Mark is currently serving an aggregate prison term of two consecutive life sentences for these crimes and has been incarcerated since April 1, 2003.
[2] The Twelfth Appellate District's decision fills out of the factual situation: "The brothers lived in the same single-family house, each had his own set of keys, and Richard had full use of his brother's house, where he slept every night and shared meals * * *. There is no evidence in the record of an arms length arrangement, for although Richard helped with utility expenses and bought his own food, he did not pay a fixed amount of rent; nor did his brother expect him to do so. Richard testified that he `helped out' with rent when necessary." Thompson v.Preferred Risk Mut. Ins. Co. (May 12, 1986), 12th Dist. No. CA85-09-073, 1986 Ohio App. LEXIS 6712, at *8.
[3] The dissent would reverse the grant of summary judgment on the grounds that the joint obligations clause in the Allstate policy is somehow in conflict with the liability provisions of the policy. Such an argument has neither been raised nor argued by any of the parties to this appeal. Nor is this argument supported by case law. Cases interpreting the joint obligations clause do so in a manner consistent the interpretation contained herein: "one insured's intentional acts bar negligent supervision claims against other insureds." Allstate Ins. Co.v. Kenney (E.D.Pa.2003), Case No. 02-CV-02387, 2003 U.S. Dist. LEXIS 18251, at *16 (citations omitted); accord Allstate Ins. Co. v.Steele (C.A.8, 1996), 74 F.3d 878, 881 (citations omitted); Castro v.Allstate Ins. Co. (S.D.Cal.1994), 855 F.Supp. 1152, 1155 (citations omitted).