OPINION
{¶ 1} Adam W. Burkhart appeals from a judgment of the Ashtabula County Court of Common Pleas which found him guilty of domestic violence and sentenced him to ninety days of house arrest. For the following reasons, we affirm.
 {¶ 2} Substantive Facts and Procedural History
 {¶ 3} The record reflects Ms. Katherine Carter, Mr. Burkhart's mother-in-law, had custody of Mr. Burkhart's and her daughter's two children, due to her daughter's incarceration for an offense unrelated to the instant case. On February 14, 2008, an *Page 2 
altercation occurred when Mr. Burkhart came to Ms. Carter's house to pick up one of the children for visitation. As a result of the incident, Mr. Burkhart was charged with domestic violence, a misdemeanor of the first degree, and the matter was tried to the bench.
 {¶ 4} At trial, Ms. Carter testified that on February 14, 2008, Mr. Burkhart came to her house to pick up four-year-old Adam for visitation. He and his girlfriend, Sabrina Egleston, arrived around 6:00 p.m. after they went to Wal-Mart to get a booster seat for Adam. When they arrived, Adam ran out of the house to Mr. Burkhart, who picked him up and put him in the back seat of the car. Ms. Carter followed Adam and walked to the driver's side of the vehicle, driven by Ms. Egleston. She became unhappy when she did not see a booster seat suitable for Adam.
 {¶ 5} Ms. Carter testified that because Mr. Burkhart did not put Adam on a lap belt, she stood there waiting for the lap belt to be put on. Both Ms. Egleston and Mr. Burkhart screamed for Ms. Carter to get out of the way so they could shut the door and Ms. Egleston pushed Ms. Carter on her chest with both hands. Ms. Carter then walked around to the passenger's side the vehicle. At that point, Adam crawled to the front of the car, and Ms. Carter decided to pick up Adam and took him out of the vehicle. She testified that as she stood there holding Adam, Mr. Burkhart tried to take the child from her. She stated "I wouldn't let him have him back, so he hit me in the head three or four times."
 {¶ 6} The transcript reflects the additional testimony by Ms. Carter:
 {¶ 7} "A: He said, give my F'ing kid. And he tried to take [Adam] back from me and I didn't let go of him. *Page 3 
 {¶ 8} "Q. Then what did he do?
 {¶ 9} "A. He hit me in the head three or four times on the side; and, then, when that didn't do anything, then he grabbed me by my hair, jerked me around my hair until me and the kid went down.
 {¶ 10} "Q. And at some point, did he hit you in the face when he was hitting you?
 {¶ 11} "A. I had a bump here, so he must have got me right here. I remember having a bump, ***.
 {¶ 12} "***.
 {¶ 13} "Q. What happened after that?
 {¶ 14} "A. The kid and I was laying on the ground, and they left. They backed out and left.
 {¶ 15} "Q. And when you were laying on the ground, how were you laying on the ground?
 {¶ 16} "A. I was still holding onto the child, and I was down, all the way down, flat on the — I don't know how I got up.
 {¶ 17} "Q. Okay.
 {¶ 18} "A. It was pure ice. All icy.
 {¶ 19} "Q. It was icy?
 {¶ 20} "A. Yeah. But I didn't fall on my own.
 {¶ 21} "***.
 {¶ 22} "THE COURT: So he struck you where and how many times?
 {¶ 23} "THE WITNESS: On the left side of my head right here.
 {¶ 24} "THE COURT: Mm-hmm. *Page 4 
 {¶ 25} "THE WITNESS: Probably, like, three, four times.
 {¶ 26} "THE COURT: With his fist?
 {¶ 27} "THE WITNESS: I don't' know. ***."
 {¶ 28} Ms. Carter testified that she suffered bruises on her hand and her legs, as well as elevated blood pressure, from the incident. She went to the hospital the next day and was put on blood pressure medication.
 {¶ 29} When questioned about whether they had lived together, Ms. Carter testified that "over the past years" Mr. Burkhart had lived with her at her home "off and on." The last time he lived there was for "probably a few months." Before that, he lived at her home "several times." When she testified that she would always let Mr. Burkhart "stay" at her house, the following colloquy occurred:
 {¶ 30} "THE COURT: Staying there and living there are two — staying there and being there on occasion are different things. We're talking about living there. You know, sleeping at night, getting up in the mornings, returning there after work, whatever. Hanging his hat there, et cetera. How much — how often has he done that or for how long a period of time has he done that in the past?
 {¶ 31} "THE WITNESS: Well, it never hit a year.
 {¶ 32} "THE COURT: Pardon?
 {¶ 33} "THE WITNESS: It never was a year, like, as long as a year. I'd say a few months `cause he would always get mad and leave.
 {¶ 34} "THE COURT: Okay." *Page 5 
 {¶ 35} On cross-examination, she denied the defense counsel's suggestion that she may have slipped and fell on the icy driveway when she tried to take Adam out of the car.
 {¶ 36} The transcript also contains the following exchange between Ms. Carter and the defense counsel regarding whether Mr. Burkhart lived in her household:
 {¶ 37} "Q. Ma'am, you indicated when Mr. — that Mr. Burkhart stayed with you off and on; is that correct?
 {¶ 38} "A. Over the previous years, yeah.
 {¶ 39} "Q. Okay. Did he ever receive mail when he was staying with you at your residence?
 {¶ 40} "A. Yeah, mm-hmm.
 {¶ 41} "Q. Did he have a key to the residence?
 {¶ 42} "A. No.
 {¶ 43} "Q. Okay. Did he have any furniture at the residence or anything like that?
 {¶ 44} "A. No."
 {¶ 45} Deputy Johns of the Ashtabula County Sheriff's Department also testified for the state. He stated that when he arrived at the scene of the incident, Ms. Carter reported to him that there was an argument between her and Mr. Burkhart over Adam's car seat and, when she attempted to remove Adam from the vehicle, she was struck by Mr. Burkhart three or four times, and was pulled to the ground by her hair while she was holding Adam. Deputy Johns stated her injuries were consistent with her statements, as he observed redness on her temple area, with swelling on her eyebrow, which he *Page 6 
photographed. When asked if the driveway was icy, he testified that he could not recall "with a hundred percent certainty."
 {¶ 46} At the close of the state's case, the defense moved for acquittal pursuant to Crim. R. 29 on the ground that the state failed to present sufficient evidence to show that Mr. Burkhart was a former household or family member. The defense argued that the evidence showed that although Mr. Burkhart received mail at Ms. Carter's home, he did not have a key to the home and did not have any furniture there. The court denied the motion.
 {¶ 47} In his defense, Mr. Burkhart testified that Ms. Carter fell on the ice as she was pulling the child out of the car while arguing with him. He testified:
 {¶ 48} "It wasn't I slugged her. It wasn't I hit her. It wasn't I knocked her inside the head or a get-back-at-you-thing. It was a simple plain out argument. Why you taking my kids from me? When can I see them? What's your excuse this time? She fell. Just the way it happened."
 {¶ 49} Mr. Burkhart's girlfriend, Sabrina Egleston, testified that Ms. Carter got inside the car and after she had a hold of Adam she sat in the car and then as she got out of the car, she slipped on the ice.
 {¶ 50} The trial court found Mr. Burkhart guilty of domestic violence and ordered him to serve ninety days of house arrest, which the court stayed pending this appeal.
 {¶ 51} On appeal, Mr. Burkhart assigns the following errors for our review:
 {¶ 52} "[1.] The trial court erred as a matter of law by overruling defendant-appellant's Crim. R. 29 motions for acquittal made at the close of the state's case and the close of all the evidence. *Page 7 
 {¶ 53} "[2.] The trial court's verdict was against the manifest weight of the evidence."
 {¶ 54} In his first assignment of error, Mr. Burkhart contends that the state failed to present sufficient evidence to sustain a conviction of domestic violence. In particular, he claims insufficient evidence existed to establish that the victim was a "family or household member."
 {¶ 55} Standard of Review for a Sufficiency of Evidence Claim
 {¶ 56} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim. R. 29(A). When reviewing a challenge of the sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, at paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 57} A sufficiency challenge requires this court to review the record to determine whether the state presented evidence on each of the elements of the offense. This test involves a question of law and does not permit us to weigh the evidence. State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 58} Family or Household Member
 {¶ 59} R.C. 2919.25 states:
 {¶ 60} "No person shall knowingly cause or attempt to cause physical harm to a family or household member." *Page 8 
 {¶ 61} Section (F) of the statute defines "family or household member" as follows:
 {¶ 62} "(1) `Family or household member' means any of the following:
 {¶ 63} "(a) Any of the following who is residing or has resided withthe offender:
 {¶ 64} "(i) A spouse, a person living as a spouse, or a former spouse of the offender;
 {¶ 65} "(ii) A parent or a child of the offender, or another person related by consanguinity or affinity to the offender;
 {¶ 66} "(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.
 {¶ 67} "(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.
 {¶ 68} "(2) `Person living as a spouse' means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." (Emphasis added.)
 {¶ 69} Under R.C. 2919.25(F)(1), there are two categories of "family or household member": the first category of "family or household member," defined by paragraph (a), requires that the individual "is residing or has resided with the offender," whereas the second category of "family or household member," defined by paragraph (b), does not have such a requirement. In this case it is undisputed that Ms. Carter's daughter was married to Mr. Burkhart at the time of the incident, and therefore she fits under the first category as defined by (F)(1)(a)(iii). As such, the state must prove that *Page 9 
Mr. Burkhart "is residing or has resided with" Ms. Carter in order for him to be convicted of domestic violence.
 {¶ 70} Notably, R.C. 2919.25(F)(2), which defines "person living as a spouse," requires the cohabitation between the offender and the "person living as a spouse" to have occurred "within five years prior to the date of the alleged commission of the act in question." In contrast, there is no temporal requirement in R.C. 2919.25(F)(1), the section pertinent to the instant case.
 {¶ 71} R.C. 3113.31, which grants a civil protection order to a "family or household member" facing the threat of domestic violence, defines the "family or household member" in a manner identical to R.C. 2919.25 (F). Interpreting that statute, the Tenth Appellate District, inMansaray v. Sankoh, 10th Dist. No. 04AP-872, 2005-Ohio-1451, stated that the statute "does not specify either a time frame or a length of time that a petitioner and a respondent must reside together, but only requires that they reside together at some point in time." Id. at ¶ 11, citing State v. Mrus (1991), 71 Ohio App.3d 828, 831 overruled on othergrounds (this court, interpreting R.C. 2919.25, commented that the legislature did not intend to specify a time period for the residency requirement for "family or household member" other than those in the class of "person living as a spouse"). See, also, Maglionico v.Maglionico (Nov. 9, 2001), 11th Dist. No. 2000-P-0115, 2001 Ohio App. Lexis 8901, *9.
 {¶ 72} It is undisputed that Mr. Burkhart was not living in Ms. Carter's household at the time of the incident. Thus, in order to prove his commission of domestic offense, the state must present evidence to prove that he "has resided" with Ms. Carter at some point in time in the past. *Page 10 
 {¶ 73} The term "residing" is not defined anywhere in the statute.State v. Toles, 4th Dist. No. 99 CA 9, 1999 Ohio App. LEXIS 6125, *4-5. Therefore we seek guidance from the courts that have considered this notion in the context of domestic violence. Blacks Law Dictionary 8 defines the notion of "residence" as including "[t]he act or fact of living in a given place for some time" and "[t]he place where one actually lives, as distinguished from a domicile." State v. Sims,169 Ohio App.3d 579, 2006-Ohio-6285, ¶ 19, citing 8 Black's Law Dictionary (8 Ed. 2004), 1335. Residing means "to live in a place on an ongoing basis." Sims at ¶ 19, citing 4 Ohio Jury Instructions (2004), Section 519.25(12).
 {¶ 74} "Residency is determined from the living circumstances of the parties." State v. Alvey, 7th Dist. No. 03 BE 24, 2003-Ohio-7006, ¶ 25. "Sharing meals and coming over to each other's house frequently is not enough to be considered to be residing together." Id. "[P]eriodic visits with one another, whether or not they are overnight, and no matter how frequent, will not rise to the level necessary to meet the statutory requirements." Toles at *5, citing Adrine and Ruden, Ohio Domestic Violence Law (1999) 222, § T9.4. See, also, Alvey at ¶ 25; Sims
at ¶ 20.
 {¶ 75} "[T]he residency requirements under R.C. 2919.25 *** envision something more permanent in nature than just periodic visits even if those visits are overnight or last several days." Toles at *6. InToles, the court concluded that no evidence was ever introduced to show that defendant "was, or had been at one time, a permanent or continuous resident of the household" and therefore there was insufficient evidence to prove the "family or household member" element of the domestic violence offense. Id. at *7. *Page 11 
 {¶ 76} Our court, in considering the notion of "resident of a household" in the insurance context, defines the term as referring to "one who lives in the home of the named insured for a period of some duration or regularity, although not necessarily there permanently, but excludes a temporary or transient visitor." Allstate v. Collister, 11th Dist. No. 2006-T-0112, 2007-Ohio-5201, ¶ 19, citing Silvers v.Kosovec (Aug. 9, 1996), 11th Dist. No. 95-T-5331, 1996 Ohio App. LEXIS 3349, at *5.
 {¶ 77} Here, the trial transcript reflects Ms. Carter's testimony that Mr. Burkhart, her son-in-law, has lived with her at her home "off and on" over the past few years; the last time he lived with her was for a duration of a few months. She testified that he never stayed for as long as a year because "he would always get mad and leave." She testified that he received mail at her residence but did not have a key to it, and further that he did not have furniture at her home.
 {¶ 78} Mr. Burkhart argues this evidence is insufficient to show he "has resided" with Ms. Carter for the purpose of the domestic violence statute. The state argues, on the other hand, that it has presented sufficient evidence to prove the "family or household member" element of the statute.
 {¶ 79} Our review of the case law cited above indicates that the courts, when considering the notion of residency, exclude only a "temporary or transient visitor." The testimony at trial reveals that the "living circumstances" in this case establishes more than "periodic visits" or "overnight visits lasting several days" by Mr. Burkhart. Each time he lived in Ms. Carter's household it was for "a period of some duration"; therefore, he was by no means a "temporary or transient visitor." Although he did not have a key to her residence during the time he lived there, the permanent nature of the living *Page 12 
arrangement is supported by the fact that he received mail there while he lived in her household. This evidence, if believed by the trier of fact, shows Mr. Burkhart had been for several times a "permanent or continuous resident" of Ms. Carter's household, and therefore "has resided" with Ms. Carter. Accordingly, we conclude the state has presented evidence going to the "family or household member" element of the domestic violence statute. Mr. Burkhart's first assignment of error is without merit.
 {¶ 80} Manifest Weight
 {¶ 81} In his second assignment of error, Mr. Burkhart contends his conviction is against the manifest weight of the evidence, arguing Ms. Carter's account of the incident was uncorroborated while his own account was corroborated by another witness. He also argues Ms. Carter's animosity towards him undermined her credibility as a witness.
 {¶ 82} "Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v. Higgins, 11th Dist. No. 2005-L-215, 2006-Ohio-5372, ¶ 35, citing State v. Thompkins,78 Ohio St.3d 380, 387.
 {¶ 83} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Fritts, 11th Dist. No. 2003-L-026, 2004-Ohio-3690, ¶ 23, citing State v. Martin (1983),20 Ohio App.3d 172, 175. *Page 13 
 {¶ 84} "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986), 22 Ohio St.3d 120, 123. A factfinder is free to believe all, some, or none of the testimony of each witness appearing before it. State v. Thomas, 11th Dist. No. 2004-L-176, 2005-Ohio-6570, at ¶ 29.
 {¶ 85} "When reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. *** This presumption arises because the trial judge had an opportunity to view the witnesses and observe their demeanor in weighing the credibility of the witnesses." State v. Reeves, 11th Dist. No. 2006-T-0099,2007-Ohio-4765, ¶ 14, citing Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 79-81.
 {¶ 86} Here, Ms. Carter testified that as she took four-year-old Adam out of the car Mr. Burkhart hit her in the head three or four times on the left side, grabbed her by her hair, jerked her around until she and the child fell to the ground, although she did not remember whether he hit her with his fist or open hand. Her testimony, contrary to Mr. Burkhart's claim, was corroborated by Deputy Johns, who testified that after he arrived at the scene of the incident, Ms. Carter reported to him that Mr. Burkhart struck her three or four times and that she was pulled to the ground by her hair while holding Adam. He further testified that her injuries were consistent with her statements, as he observed redness on her temple area, with swelling on her eyebrow. *Page 14 
 {¶ 87} On the other hand, Mr. Burkhart gave a different account of the incident, testifying that Ms. Carter fell on the icy driveway as they argued. In support of his testimony, he presented the testimony of his girlfriend, who was sitting in the driver's seat as the incident occurred. She testified that as Ms. Carter grabbed Adam out of the car, she slipped on the icy ground.
 {¶ 88} Ms. Carter's account of the incident at trial was consistent with what she reported to Deputy Johns at the scene of the incident. Furthermore, the officer testified that her injuries were consistent with her statements, thus corroborating her testimony that Mr. Burkhart hit her three or four times on the left side of her head. Mr. Burkhart's account, on the other hand, is supported by a potentially biased witness. Presented with the conflicting testimony, we are mindful that the trier of fact had an opportunity to view the witnesses and observe their demeanor, and therefore the choice between credible witnesses and their conflicting testimony rests solely with the factfinder.Awan at 123. We cannot say that the trier of fact, in resolving conflicts in the evidence in this case clearly lost its way and created such a manifest miscarriage of justice that Mr. Burkhart's conviction must be reversed. Thompkins. Consequently, we overrule the second assignment of error.
 {¶ 89} The judgment of the Ashtabula County Court of Common Pleas is affirmed.
CYNTHIA WESTCOTT RICE, J., TIMOTHY P. CANNON, J., concur. *Page 1