[Cite as *State v. Gilliam*, 2012-Ohio-5034.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110587 |
| | | TRIAL NO. B-1100323 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| KENYA GILLIAM, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Common Pleas Court

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: October 31, 2012

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *James Michael Keeling*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Scott A. Rubenstein*, for Defendant-Appellant.

Please note: This case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1}    Defendant-appellant Kenya Gilliam was convicted after a bench trial of six counts of rape of a person less than 13 years of age under R.C. 2907.02(A)(1)(b), for having sexual contact over a period of six years with her girlfriend's son. The trial court imposed consecutive sentences, and imposed life without the possibility of parole on two of the offenses. Gilliam now appeals from her convictions.

{¶2}    In 2005, Gilliam and her girlfriend, T.B., began living together with T.B.'s children in an apartment on Lockhurst Lane, later moving to an apartment on Quebec Avenue in January 2007. The couple eventually ended their relationship in August 2008, and Gilliam moved out of the apartment. Even though Gilliam's relationship with T.B. had ended, she continued to babysit T.B.'s children on occasion from June 2009 until January 2010, while T.B. attended classes.

{¶3}    In 2011, T.B.'s then-12-year-old son, S.E., was adjudicated delinquent by the Hamilton County Juvenile Court for committing a sexual act, and was placed in Hillcrest Training School for treatment. A treatment administrator at Hillcrest, Joe Youngblood, asked S.E. about S.E.'s sexual history as part of his treatment, at which time S.E. disclosed to Youngblood that he had had oral sex and intercourse with Gilliam, which had begun in 2005 when S.E. had been just seven years old.

{¶4}    After Youngblood reported the allegations to county officials, Cincinnati police officers interviewed Gilliam. At first Gilliam repeatedly denied any contact with S.E., but she eventually confessed to having had oral sex and intercourse with S.E.—although she denied that it had occurred as many times as that alleged by S.E. Gilliam was indicted for six counts of rape of a person less than 13 years of age under R.C. 2907.02(A)(1)(b). The matter proceeded to a bench trial.

{¶5}   After hearing the testimony of the prosecution's witnesses—T.B., S.E., Youngblood, and the police officer who had interviewed Gilliam—as well as the testimony of Gilliam and Gilliam's close friend for the defense, the trial court found Gilliam guilty of all six counts of rape.  The trial court sentenced Gilliam to life with the possibility of parole on Counts 1 and 2; life without the possibility of parole on Counts 3 and 4; and ten years to life without parole on Counts 5 and 6.  The trial court imposed the sentences consecutively.  This appeal ensued.

### *Motion to Suppress Gilliam's Confession*

{¶6}   We address Gilliam's second assignment of error first, in which she argues that the trial court erred in denying her motion to suppress the statement she made to police officers, confessing to oral sex and intercourse with S.E.  Appellate review of a ruling on a motion to suppress a confession presents a mixed question of law and fact.  *State v. Gray*, 1st Dist. No. C-081257, 2009-Ohio-5844, ¶ 19, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  This court will accept a trial court's findings of fact as true if they are supported by competent, credible evidence; however, we apply a de novo standard of review in determining whether the facts satisfy the applicable legal standard.  *Gray* at ¶ 19, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982) and *Burnside* at ¶ 8.

{¶7}   In order for a defendant's pretrial statement made during a custodial interrogation to be admitted in evidence, the prosecution has the burden of showing that the defendant voluntarily waived his or her *Miranda* rights.  *State v. Edwards*, 49 Ohio St.2d 31, 38, 358 N.E.2d 1051 (1976), citing *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

{¶8}   The same test is applied in determining whether a *Miranda* waiver is voluntary as is applied in determining whether a pretrial confession is voluntary: whether such action was voluntary under the totality of the circumstances. *State v. Treesh*, 90 Ohio St.3d 460, 472, 739 N.E.2d 749 (2001).  A totality of the circumstances includes " 'the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.' " *State v. Mason*, 82 Ohio St.3d 144, 154, 694 N.E.2d 932 (1998), quoting *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus. The totality-of-the-circumstances test only applies in determining whether a confession is voluntary if the court first determines that the interrogators used inherently coercive tactics in obtaining the confession. *Treesh* at 472.  Examples of inherently coercive tactics include threats, physical abuse, or deprivation of food, medical treatment, or sleep. *Id.*

{¶9}   Gilliam argues that the police officers' interview tactics amounted to mental abuse.  She argues she was "badgered" by the police officers, that they exposed painful memories of her own sexual abuse, and that she was denied a break to smoke a cigarette.  She also argues that she was emotionally vulnerable, uneducated, and had never been interviewed by police officers before.  Gilliam's argument, however, is belied by reviewing her recorded interview.  Although the officers were persistent in questioning Gilliam, they did not coerce her into confessing.  The record shows that Gilliam comprehended the gravity of the situation, shown by her repeated reluctance to tell the officers that she had had sexual contact with S.E., and the record does not indicate that the officers took

advantage of Gilliam's education level or inexperience with the criminal justice system. The officers allowed Gilliam to take a smoke break toward the end of the interview, they did not deprive her of any necessities, and although Gilliam's memories of her own sexual abuse were discussed, she initiated the discussion of that topic. Therefore, because the officers did not use inherently coercive tactics in obtaining Gilliam's confession, the trial court did not err in denying Gilliam's motion to suppress.

{¶10} We overrule Gilliam's second assignment of error.

### Reference to Victim's Polygraph Examination

{¶11} In her first assignment of error, Gilliam alleges that the trial court erred in basing its verdict on inadmissible evidence. In particular, Gilliam argues that the trial court impermissibly questioned Youngblood regarding a polygraph examination given to S.E., as well as polygraph examinations of other juveniles at Hillcrest. During the redirect examination of Youngblood by the prosecutor, Youngblood indicated that all of the juveniles are given a polygraph examination as part of the sexual-treatment program at Hillcrest, which is then used to help identify any other potential victims.

{¶12} The trial court then engaged Youngblood as follows:

Q. You've had like over or around a hundred cases. Have you ever had a kid say, 'so-and-so molested me,' and have them take a polygraph and they're lying?

A. Me personally? I have not had that happen.

The prosecutor then resumed redirect and asked Youngblood whether he had given S.E. a polygraph as well, to which Youngblood responded affirmatively.

{¶13} The Ohio Supreme Court has determined that the results of a polygraph examination can only be admitted at trial if the parties stipulate in writing to its admissibility, and if the trial court, in its discretion, is satisfied that the polygraph examiner is qualified and that the test was conducted properly. *State v. Souel*, 53 Ohio St.2d 123, 132, 372 N.E.2d 1318 (1978); *State v. Knight*, 140 Ohio App.3d 797, 807; 749 N.E.2d 761 (1st Dist.2000). Not only are polygraph results inadmissible absent satisfying certain conditions, but the refusal or offer to undergo a polygraph test is also inadmissible. *State v. Hegel*, 9 Ohio App.2d 12, 222 N.E.2d 666 (2d Dist.1964); *State v. Dillon*, 5th Dist. No. 2008-CA-37, 2009-Ohio-3134, ¶ 110.

{¶14} In *State v. Harris*, 1st Dist. No. C-830927, 1984 Ohio App. LEXIS 11030 (Oct. 3, 1984), the mother of a child victim testified at the defendant's jury trial that her daughter had gone to the police station to take a polygraph examination and that charges then had been brought against the defendant. *Id.* at *3. Even though the trial court sustained defense counsel's objection and issued a curative instruction to the jury, the trial court refused to grant a mistrial. This court reversed the defendant's rape conviction, determining that the case turned solely on witness credibility and that "[t]he clear implication of [the mother's testimony was] that the results of the polygraph test indicated that [the victim] was telling the truth about the crimes with which appellant was charged." *Id.* at *7.

{¶15} The testimony elicited from Youngblood by the trial court and prosecutor regarding the polygraph examinations was inadmissible under *Souel* and its progeny, and the trial court erred in admitting the testimony. *See Souel*, 53 Ohio St.2d at 132, 372 N.E.2d 1318. The reasonable inference drawn from Youngblood's

testimony regarding the polygraph examinations at Hillcrest, including S.E.'s, was that S.E. had taken a polygraph examination regarding his sexual history, including the encounters with Gilliam, and that S.E. had responded truthfully. This is precisely the type of inference that we deemed impermissible in *Harris*.

{¶16} Although the trial court erred in admitting Youngblood's testimony, Gilliam did not object to the admission of this testimony at trial, and, therefore, we review the record for plain error. *State v. Jordan*, 1st Dist. No. C-110833, 2012-Ohio-3793, ¶ 13; Crim.R. 52(B). Plain error occurs when, but for the allegedly inadmissible evidence, the outcome of the trial would have been different. *Jordan* at ¶ 13, citing *State v. Lukacs*, 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 34 (1st Dist.).

{¶17} Unlike *Harris*, Gilliam's trial did not turn solely on the credibility of the victim, S.E. A police officer testified that Gilliam had confessed to having had oral sex and intercourse with S.E., and that confession had been recorded. Gilliam had even given a detailed account in her statement to officers regarding oral sex with then-seven-year-old S.E., which had aligned closely with S.E.'s account. Gilliam testified at trial that she had been pressured into giving her statement, but her testimony is contradicted by her recorded confession. Moreover, S.E. testified with specificity as to the circumstances surrounding the rapes. Therefore, we cannot say that, but for Youngblood's inadmissible testimony regarding the polygraph, the outcome of the trial would have been different.

{¶18} We overrule Gilliam's first assignment of error.

### Sufficiency and Weight of the Evidence

7

{¶19}  We address Gilliam's third and fourth assignments of error together. In her third assignment of error, she argues that her convictions were against the manifest weight of the evidence.  In her fourth assignment of error, she argues that her convictions were not supported by sufficient evidence.  To reverse a conviction for insufficient evidence, we must determine, after viewing the evidence in the light most favorable to the state, that no rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *State v. Waddy*, 63 Ohio St.3d 424, 430, 588 N.E.2d 819 (1992).  By contrast, to reverse a conviction on manifest-weight grounds, this court must weigh the evidence and the credibility of the witnesses to determine if the trier of fact clearly lost its way and created a manifest miscarriage of justice.  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶20}  The prosecutor stated in opening statement that Counts 2 and 3 of the indictment "could be repetitive charges" depending on the testimony of S.E., but that the state indicted Gilliam in that manner "to cover the law on rape at the time it changed."  Count 3 of the indictment alleged that Gilliam had raped S.E. during a time period from January 2, 2007, to January 13, 2007, approximately.  At the close of the presentation of evidence to the trial court, the prosecutor stated in closing argument that Count 3 was the "duplicative count[,]" but that he believed "[t]he other counts * * * [were] prove[n] beyond a reasonable doubt * * *."  The trial court nevertheless found Gilliam guilty on Count 3 and sentenced her to life in prison without the possibility of parole on that count.  Our review of the record confirms the prosecutor's statement, and, therefore, the evidence was insufficient to support Gilliam's conviction on Count 3.  Because Gilliam's conviction based upon

8

insufficient evidence amounts to plain error, we vacate her conviction on Count 3. *See State v. Sims*, 169 Ohio App.3d 579, 2006-Ohio-6285, 863 N.E.2d 1110, ¶ 22; *see* Crim.R. 52(B).

{¶21} As to the remaining counts, after viewing the evidence in the light most favorable to the prosecution, we determine that a rational trier of fact could have found all the essential elements of rape proven beyond a reasonable doubt. Further, we cannot determine that the trial court clearly lost its way and created a manifest miscarriage of justice in finding Gilliam guilty. Therefore, we sustain Gilliam's fourth assignment of error as to Count 3 only.

### Sentencing

{¶22} In Gilliam's fifth assignment of error, she argues that the trial court erred in imposing a sentence that was not supported by the record. In reviewing sentences imposed by a trial court, we must determine first whether the sentences were contrary to law. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 14. If the sentences were not contrary to law, we must then review the sentences to determine whether the trial court abused its discretion. *Id.* at ¶ 17. Gilliam specifically argues that the trial court erred in sentencing her to consecutive life terms by failing to consider mitigating circumstances under R.C. 2929.12(C)(4), such as her abusive past and her lack of a criminal background.

{¶23} As to Counts 5 and 6, the trial court sentenced Gilliam on each of those counts to ten years to life in prison without parole. At the time that Gilliam had committed the rapes in Counts 5 and 6, S.E. had been at least ten years old, and, therefore, a sentence of life without parole was not permitted. *See* R.C. 2907.02(B). Instead, the trial court was required to sentence Gilliam to an indefinite prison term

consisting of a minimum term of ten years and a maximum term of life in prison. *See* R.C. 2971.03(B)(1)(a). Therefore, because Gilliam's sentences in Counts 5 and 6 were outside the statutory range, those sentences were clearly and convincingly contrary to law and must be vacated. *See State v. Andrew*, 1st Dist. No. C-110141, 2012-Ohio-1731, ¶ 8-10.

{¶24} As to the sentences imposed on Counts 1, 2, and 4, including the imposition of consecutive sentences, we cannot determine that the sentences were an abuse of discretion in light of the seriousness of Gilliam's crimes and the age and vulnerability of the victim. *See Kalish* at ¶ 17. We sustain Gilliam's fifth assignment of error to the extent that we vacate the sentences imposed on Counts 5 and 6, and given our disposition of Gilliam's fourth assignment of error, we also vacate the sentence imposed on Count 3.

## *Conclusion*

{¶25} In conclusion, we vacate the conviction and sentence imposed by the trial court on Count 3 and discharge Gilliam from further prosecution on that count. We also vacate the sentences imposed by the trial court on Counts 5 and 6, and remand this cause for resentencing on those counts. We affirm the remainder of the trial court's judgment.

Affirmed in part, reversed in part, and cause remanded.

**HENDON, P.J.,** and **CUNNINGHAM, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.