[Cite as *State v. Turner*, 2016-Ohio-813.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 102984

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**CAMBER ALICIA TURNER**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-588669-A

**BEFORE:** Blackmon, J., Jones, A.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** March 3, 2016

**ATTORNEY FOR APPELLANT**

Daniel J. Misiewicz
Law Office of Daniel J. Misiewicz
614 W. Superior Avenue
Suite 1300
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Kerry A. Sowul
Assistant County Prosecutor
9th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1}   Appellant Camber Alicia Turner appeals her convictions for aggravated assault and domestic violence and assigns the following two errors for our review:

I.   The trial court erred in denying defendant-appellant's motion for acquittal pursuant to Ohio Criminal Rule 29.

II.   Defendant-appellant's convictions are against the manifest weight of the evidence.

{¶2}   Having reviewed the record and pertinent evidence, we affirm Turner's convictions.   The apposite facts follow.

{¶3}   The Cuyahoga County Grand Jury indicted Turner on two counts of felonious assault and one count of domestic violence.   Turner waived her right to a jury trial, and the matter was tried to the bench.

{¶4}   The evidence showed that Turner and the victim are twin sisters.   Turner's sister and her young niece spent the night with Turner.   Before retiring for the night, Turner told her sister to clean up after herself.

{¶5}   Turner testified that the next morning she saw that the kitchen was a mess and got into a verbal altercation with her sister.   According to Turner and her mother, Turner's sister has anger problems and becomes enraged over minor issues.   The verbal altercation between the sisters turned physical when Turner told her sister she felt sorry for her daughter.   Turner's sister is very sensitive regarding her daughter, and Turner knew this.   According to Turner, her sister slapped her with an open hand and then the women began hitting and punching each other and pulling each other's hair.   Eventually, the sister pushed Turner into a closet and ended the fight when her daughter began to cry.

{¶6}    The sister testified that she left the fight to comfort her child and to call her mother to pick her up.   She stated that at this point she thought the fight was over.    However, while she was on the phone with their mother with her back turned, she heard Turner yelling, "get out!"   She stated that as she turned, Turner cut her with a knife.   The sister was a reluctant witness and did not want Turner to be prosecuted.

{¶7}    According to Turner, after being pushed into the closet, she grabbed a knife from the kitchen counter and approached her sister while yelling, "get out!"   She stated that when her sister turned to face her, the knife sliced her sister's arm.   At first, Turner thought her sister was reaching for her phone, but then she saw the blood.   Both Turner and her sister stated that it was only one slice; however, the sister had three different knife wounds on her arm.   Turner immediately called 911 and attempted to help her sister to stop the bleeding.

{¶8}    Officer Gregory Patterson responded to the 911 call.   He stated that when he arrived both Turner and her sister were emotionally upset and crying.   He separated the women and then questioned Turner.   Turner told him that she was angry with her sister and cut her with the knife.   She denied that she acted in self-defense and told him that "at that point the argument was over."

{¶9}    Officer Charles Duffy stated that he went to the hospital to question the victim. While there, he saw the injuries.   He stated there were three cuts to the victim's arm.   There was a deep wound on her forearm, a wound on her bicep, and a wound near her wrist.    One of the wounds was so deep that staples were used to close the wound.

{¶10} The trial court found Turner guilty of two counts of aggravated assault, which is a lesser offense of felonious assault, and one count of domestic violence.   The trial court merged

all of the counts into one count of aggravated assault and sentenced Turner to one year of community control.

## Sufficiency of the Evidence

{¶11} In her first assigned error, Turner argues that her convictions are not supported by sufficient evidence.

{¶12} Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the prosecution's evidence is insufficient to sustain a conviction for the offense. Crim.R. 29(A) and sufficiency of evidence review require the same analysis. *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134, citing *Cleveland v. Pate*, 8th Dist. Cuyahoga No. 99321, 2013-Ohio-5571, citing *State v. Mitchell*, 8th Dist. Cuyahoga No. 95095, 2011-Ohio-1241.

{¶13} A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the prosecution has met its burden of production at trial. *State v. Givan*, 8th Dist. Cuyahoga No. 94609, 2011-Ohio-100, citing *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the prosecution's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. *Id.*

{¶14} Turner was convicted of aggravated assault pursuant to R.C. 2903.12(A)(2), which states:

> (A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
>
> * * *

(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.

{¶15} Turner was also convicted of domestic violence pursuant to R.C. 2919.25(A), which provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶16} Each of the above offenses requires that the defendant act "knowingly." Turner argues that the evidence failed to show that she committed the crimes knowingly because the cut to her sister's arm was accidental and not planned or intentional. Turner testified at trial that the cut occurred as her sister turned quickly to face her and her arm came into contact with the knife. However, Officer Patterson testified that Turner told him that she was so angry with her sister that she grabbed a knife from the kitchen counter, and when her sister turned around, she "lunged and sliced" her sister's arm. When he asked her if she was acting in self-defense, Turner told him that "at that point the argument was over" and she was not acting in self-defense.

{¶17} Although Turner argues that the officer did not write the report containing a summary of Turner's statements until three hours after the incident, the officer stated that his memory was fresh at the time he wrote the report. Thus, the officer's testimony supports the "knowingly" element of the crimes. Additionally, the fact that a photograph of the injuries showed three knife wounds indicates the slicing of the arm was not accidental.

{¶18} Turner also argues that there was no evidence presented that Turner ever "resided" with her twin sister, which was an element required for the domestic violence conviction. R.C. 2919.25(F)(1) defines "family member" as follows:

(1) "Family or household member" means any of the following:

(a) Any of the following who is residing or *has resided* with the offender:

* * *

(ii) A parent, a foster parent, or a child of the offender, or another person related by consanguinity or affinity to the offender. * * *

(Emphasis added.)

**{¶19}** Turner's counsel moved for acquittal of the domestic violence charge after the state rested. However, the basis of his motion was not that there was insufficient evidence presented regarding whether the twins ever resided together but that the crime was not committed knowingly. It was the trial court that questioned whether there was evidence that Turner and the victim "resided" together. Turner's counsel replied, "[I] think there was some evidence that at some point in time in their childhood that they lived part-time together." Tr. 233. Moreover, as the state argued, Turner and the victim were not merely siblings, but were twins. It would be highly unusual for twins to not live together at some point. The state had presented evidence that the twins attended the same school for part of the time, and according to the victim the two fought all the time when they were younger, and the victim knew that Turner was messy when she was younger. This evidence was sufficient for a rational trier of fact to conclude the twins at one point lived together. There is no specific time frame in the statute as to when the "residing" had to occur. The statute just requires that they lived together at some point in time. *See E. Cleveland v. Perkins*, 8th Dist. Cuyahoga No. 91369, 2009-Ohio-2131, ¶ 25; *State v. Mrus*, 71 Ohio App.3d 828, 831, 595 N.E.2d 460 (11th Dist.1991), *overruled on other grounds*; *State v. Burkhart*, 11th Dist. Ashtabula No. 2008-A-0050, 2009-Ohio-1142, ¶ 71.

**{¶20}** When Turner presented her defense, her mother testified that she raised the twins and that they grew up together in the same house. Tr. 260. Therefore, although the twins did

not live together at the time of the assault, there was evidence that they had resided together in the past. Because the statute references both present and past living arrangements, there was sufficient evidence to support the domestic violence conviction. Accordingly, Turner's first assigned error is overruled.

## Manifest Weight of the Evidence

{¶21} In her second assigned error, Turner argues that her convictions are against the manifest weight of the evidence.

{¶22} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id*. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Id*. at 387, 678 N.E.2d 541. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

*Id*. at ¶ 25.

{¶23} An appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

*Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case that the evidence weighs heavily against the conviction." *Id.*

{¶24} Turner argues that the evidence showed she had a reputation for being an "honest and peaceful person" while her sister's reputation was that of being quick to anger and physically combative with others. She contends this supports her contention that her sister was the aggressor and that Turner acted in self-defense. Whether Turner was the more peaceful sister is of no consequence. Even if the sister was the aggressor, the evidence showed that the sister walked away from the fight when her daughter started to cry. Turner cut her sister's arm while the sister was on the phone calling her mother to pick her up.

{¶25} Additionally, Turner's contention that the injury to her sister was the result of her acting in self-defense is incompatible with Turner's argument that the injury to her sister was accidental. "Accident involves the denial of a culpable mental state and is tantamount to the defendant not committing an unlawful act." *State v. Barnd*, 85 Ohio App.3d 254, 260, 619 N.E.2d 518 (3d Dist.1993). Self-defense, on the other hand, "presumes intentional, willful use of force to repel force or escape force." *Id.*

{¶26} Moreover, pursuant to Officer Patterson's testimony, he spoke to Turner immediately after the event. According to the officer, Turner told him she did not act in self-defense because the argument was over. She told him she acted out of anger. The trial court, in announcing its verdict, stated on the record that it found Officer Patterson's testimony compelling. The trial court stated as follows:

> What Officer Patterson wrote down as his rendition of what [Turner] told him that day was significant to the court. I would not have been surprised if Officer Patterson would have heard the person in [Turner's] position say, She startled me; I didn't mean to; I stuck it out; all of a sudden she's bleeding. But that's not what she said. She really is portrayed in the Officer's rendition of explaining why

she's doing this, I was angry, I went to [my sister] in the living room; not, I didn't know where she was; I went to get my phone, and whoops there she is; but rather, I went to find her and I went to her where she was in the living room, and I lunged, what's the word, sliced? * * * So in her telling to the officer, it really is a far more deliberate, purposeful thing that she's doing.

We did have testimony of course that she was yelling, "Get Out." So there is some reason to believe she's using that knife forcefully, but she was also using it to make sure she gets what she wants out of the equation.

Tr. 376-377.

**{¶27}** The trial court clearly believed Officer Patterson's rendition regarding what Turner told him occurred. We defer to the trial court regarding issues of credibility because the trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26, quoting *Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. Here, although Patterson wrote his report three hours after speaking to Turner, he testified that his mind was fresh when he wrote the report. It was within the trial court's discretion whether to believe him. Accordingly, we conclude the trial court did not create a manifest injustice in resolving inconsistent evidence. Turner's second assigned error is overruled.

**{¶28}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

LARRY A. JONES, SR., A.J., and
MELODY J. STEWART J., CONCUR