[Cite as *State v. Montgomery*, 2019-Ohio-3831.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-02-016 |
| | : | O P I N I O N |
| - vs - | | 9/23/2019 |
| | : | |
| ANTHONY C. MONTGOMERY, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 18CRB05246

D. Vincent Faris, Clermont County Prosecuting Attorney, Katherine Terpstra, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellee

Denise S. Barone, 385 North Street, Batavia, Ohio 45103, for appellant

**HENDRICKSON, P.J.**

{¶ 1} Appellant, Anthony C. Montgomery, appeals from his conviction and sentence in the Clermont County Municipal Court for domestic violence. For the reasons set forth below, judgment is reversed, appellant's conviction is vacated, and appellant is discharged.

{¶ 2} On October 29, 2018, appellant was charged by complaint with one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. The

charge arose out of an incident that occurred between appellant and his biological brother, Michael Montgomery (hereafter, "Michael"), on October 28, 2018 at appellant's home in Felicity, Clermont County, Ohio. Appellant was alleged to have started a fight by punching Michael in the face.

{¶ 3} Appellant pled not guilty to the charge and a bench trial was held on December 17, 2018. The state presented testimony from Michael and the officer who investigated the offense, Clermont County Sheriff's Deputy Travis Blanton. Michael testified that appellant is his older, biological brother. The two brothers live on the same street in Felicity, Ohio, but Michael lives seven lots down from appellant's home. On October 28, 2018, Michael went to appellant's home to check on appellant's son. At this time, appellant advised Michael not to bring family memorabilia to appellant's house before appellant "sucker punched" Michael in the eye with a closed fist. Appellant then tackled Michael to the floor, where a struggle ensued before the police were eventually called. According to Michael, he was in fear for his safety after being punched in the face by appellant.

{¶ 4} Deputy Blanton responded to a call about a disturbance at appellant's house on October 28, 2018, and he spoke with appellant. Deputy Blanton found appellant "highly intoxicated," with "slurred speech, glassy eyes, delayed reactions, [and] * * * an odor of [an] alcoholic beverage coming from his breath." Deputy Blanton was advised by appellant that Michael had brought "some property from their mother's residence," which upset appellant. Deputy Blanton testified that appellant stated he told Michael, "Don't bring anything else from that child molester" before punching Michael in the face. Michael began to punch appellant back, and appellant claimed he acted to defend himself. Based on appellant's statement and interviews of Michael and Michael's wife, who had been present for part of the altercation, Deputy Blanton determined appellant was the "primary aggressor." Deputy Blanton therefore filed a charge of domestic violence against appellant.

{¶ 5} Following Deputy Blanton's testimony, the state rested its case-in-chief. Appellant moved for acquittal pursuant to Crim.R. 29, arguing the state failed to present sufficient evidence to convict him of domestic violence. The trial court overruled appellant's motion for acquittal. Appellant then testified in his own defense, stating that Michael came to his house on October 28, 2018 to bring a bag of "miscellaneous garbage from [their] mother's house." Appellant told Michael to stop bringing stuff from their mother's house because he did not "want nothin' from her, [because] of what she did to me, she's a child molester." Then, later that day, Michael again came to appellant's house. Michael entered the home and refused to leave. Appellant testified Michael told him to "get up and put [him] out of the home." Appellant stated he "started screaming for help from [his] neighbors" and when Michael's "fist went up [and Michael] * * * took a step back like in a boxer's motion," appellant believed he was going to be punched. As a result, appellant punched Michael. Appellant testified, "I do not deny that one bit, I did punch him."

{¶ 6} After considering the foregoing testimony, the trial court found appellant guilty of domestic violence. Appellant was subsequently sentenced to 160 days in jail.

{¶ 7} Appellant timely appealed his conviction and sentence, raising two assignments of error.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN FINDING HIM GUILTY OF DOMESTIC VIOLENCE.

{¶ 10} In his first assignment of error, appellant argues his conviction for domestic violence was not supported by sufficient evidence and was against the manifest weight of the evidence.[1] Specifically, appellant contends the state failed to present evidence establishing

---

1. In his brief, appellant argues "it was an abuse of discretion for the trial court to find that [he] was properly charged for the act of domestic violence and, further, that he committed the act of domestic violence." We construe appellant's arguments as a challenge to the sufficiency and manifest weight of the evidence.

that the victim, although a "family member" of appellant, "live[d] in the same house" as appellant. Appellant also argues that his trial counsel was ineffective for failing to request that the court find him guilty of a lesser-included offense. We begin our analysis with a discussion of appellant's sufficiency argument, as we find this issue dispositive of this assignment of error.

{¶ 11} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 12} Appellant was convicted of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Pursuant to R.C. 2919.25(F)(1)(a)(ii), a "family or household member" includes a "parent, a foster parent, or a child of the offender, *or another person related by consanguinity or affinity to the offender*" who "is residing or has resided with the offender." (Emphasis added.)

{¶ 13} "[T]here is no temporal requirement in R.C. 2919.25(F)(1)." *State v. Burkhart*, 11th Dist. Ashtabula No. 2008-A-0050, 2009-Ohio-1142, ¶ 70.[2] That is to say that "[t]here is

---

2. Compare R.C. 2919.25(F)(1) to R.C. 2919.25(F)(2), the latter of which specifies that a "person living as a spouse" must be cohabiting with the offender or must have "cohabitated with the offender *within five years* prior to the date of the alleged commission of the act in question." (Emphasis added.)

no specific time frame in the statute as to when the 'residing' had to occur. The statute just requires that they lived together at some point in time." *State v. Turner*, 8th Dist. Cuyahoga No. 102984, 2016-Ohio-813, ¶ 19. *See also Burkhart* at ¶ 71-72; *E. Cleveland v. Perkins*, 8th Dist. Cuyahoga No. 91369, 2009-Ohio-2131, ¶ 25; *State v. Mrus*, 71 Ohio App.3d 828, 831 (11th Dist.1991), *overruled on other grounds*, *State v. Wyand*, 11th Dist. Portage No. 96-P-0211, 1997 Ohio App. LEXIS 1709 (Apr. 25, 1997).

{¶ 14} Accordingly, the state was required to present evidence that appellant and Michael were related by consanguinity and were either residing together at the time of the offense or had resided with one another in the past in order to establish the "family or household member" element of domestic violence. After examining the record, we find that the state failed to present any evidence that appellant and Michael had resided with one another. Although the state presented testimony that the two were biological brothers who shared a mother, there was never any testimony presented that the two brothers had lived together in the past. The state argues, however, that the trial court, as the trier of fact, could have inferred that the two brothers resided together at one point in time from the evidence admitted at trial and cites *State v. Turner*, 2016-Ohio-813 in support of its argument..

{¶ 15} In *Turner*, the defendant was convicted of domestic violence after she cut her twin sister with a knife in her home. *Id.* at ¶ 6. The sister was a guest who had stayed overnight in Turner's home. *Id.* at ¶ 4. Turner challenged whether the state had presented sufficient evidence to convict her of domestic violence, arguing that there had not been evidence that her twin sister "resided" with her. On appeal, the Eighth District found that the state had presented evidence sufficient for the trier of fact to conclude that Turner and her sister had lived together at one point in time. *Id.* at ¶ 19. The court stated, in relevant part that

Turner and the victim were not merely siblings, but were twins. It

would be highly unusual for twins to not live together at some point. The state had presented evidence that the twins attended the same school for part of the time, and according to the victim the two fought all the time when they were younger, and the victim knew that Turner was messy when she was younger. This evidence was sufficient for a rational trier of fact to conclude the twins at one point lived together. * * *

[Moreover], [w]hen Turner presented her defense, her mother testified that she raised the twins and that they grew up together in the same house. * * * Therefore, although the twins did not live together at the time of the assault, there was evidence that they had resided together in the past. Because the statute references both present and past living arrangements, there was sufficient evidence to support the domestic violence conviction.

*Id.* at ¶ 19-20.

{¶ 16} Unlike in *Turner*, there was no direct testimony presented at trial that appellant and Michael had resided together in the past. Furthermore, there was no testimony presented by any witness that would allow for the inference that the two brothers resided with one another during their childhood. No witness testified about appellant and Michael attending the same schools, being involved in childhood activities together, or having disagreements amongst themselves as they grew up together. There are certainly a number of scenarios where appellant and Michael may have resided separately during their childhood. Based on the evidence presented at trial, no inference could have been made that the two brothers had lived together in the past. Accordingly, no trier of fact, even when viewing the evidence in a light most favorable to the prosecution, could have found that Michael was a family member who had resided with the offender.

{¶ 17} As the state failed to present proof that appellant and Michael had resided with one another in the past, we find insufficient evidence to support appellant's conviction for domestic violence. We therefore sustain appellant's first assignment of error to this extent. Appellant's remaining arguments challenging the manifest weight of the evidence and whether he received ineffective representation by defense counsel are rendered moot.

Appellant's conviction for domestic violence is reversed and vacated, and double jeopardy attaches to bar the state from reprosecuting the charge. *See State v. Verga*, 12th Dist. Warren No. CA2014-11-134, 2015-Ohio-2582, ¶ 14.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE TRIAL COURT ERRED IN IMPOSING A FULL SENTENCE OF ONE-HUNDRED AND SIXTY DAYS.

{¶ 20} In his second assignment of error, appellant challenges the trial court's imposition of a 160-day jail term for his domestic violence conviction. However, we find it is unnecessary to reach the merits of this assignment of error as it has been rendered moot by our disposition of appellant's first assignment of error. *See* App.R. 12(A)(1)(c); *State v. Barrett*, 12th Dist. Brown Nos. CA2018-09-006 and CA2018-10-012, 2019-Ohio-2786, ¶ 31.

{¶ 21} Judgment reversed, appellant's conviction is vacated, and appellant is hereby discharged.

PIPER and M. POWELL, JJ., concur.